**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2195-21

IN THE MATTER OF THE
CHARTER AMENDMENT
REQUEST OF COLLEGE
ACHIEVE GREATER
ASBURY PARK CHARTER
SCHOOL.

_____

Argued September 20, 2023 – Decided March 11, 2024

Before Judges Vernoia and Gummer.

On appeal from the New Jersey Department of Education.

Stephen J. Edelstein argued the cause for appellant Neptune Township Board of Education (Weiner Law Group, LLP, attorneys; Mark A. Tabakin, of counsel and on the briefs; Dustin F. Glass, on the briefs).

Thomas Owen Johnston argued the cause for respondent College Achieve Greater Asbury Park Charter School (Johnston Law Firm, LLC, attorneys; Thomas Owen Johnston, of counsel and on the brief; Barbara Jean Bohi, on the brief).

Carolyn G. Labin, Deputy Attorney General, argued the cause for respondent Commissioner of Education (Matthew J. Platkin, Attorney General, attorney;

Sookie Bae-Park, Assistant Attorney General, of counsel; Carolyn G. Labin, on the brief).

Methfessel & Werbel, attorneys for respondent Asbury Park Board of Education, join in the brief of appellant Neptune Township Board of Education.

PER CURIAM

The Neptune Board of Education (Neptune BOE) appeals from a March 3, 2022 Commissioner of Education (Commissioner) final agency decision[1] approving College Achieve Greater Asbury Park Charter School's (College Achieve) request for an amendment to its charter permitting College Achieve to expand a school it operates to include grades ten through twelve and reduce the school's maximum enrollment from 961 to 858 students.[2] Neptune BOE argues the Commissioner's decision is arbitrary, capricious, and unreasonable because it is based on findings that are not supported by evidence in the record and the

___

[1] Neptune BOE also appeals from a February 8, 2022 decision which, as we explain, is not the final agency decision and is identical to the March 3, 2022 decision in all matters relevant to the issues on appeal.

[2] While this matter was pending before the New Jersey Department of Education (the Department), the Department was headed at different times by Acting Commissioners of Education Angelica Allen-McMillan and Kevin Dehmer. Although during the times pertinent to this appeal they served as Acting Commissioners, for purposes of clarity and simplicity, we refer to them respectively as Commissioner Allen-McMillan and Commissioner Dehmer.

Commissioner otherwise ignored Neptune BOE's public comments opposing the amendment. We affirm.

I.

College Achieve has operated a public charter school in Asbury Park since 2017. In a February 1, 2021 letter, Commissioner Allen-McMillan granted College Achieve a renewal of its charter through June 30, 2026, for grade levels kindergarten through grade nine with a maximum enrollment of 961 students. The Commissioner denied College Achieve's request to expand to include grades ten through twelve.

In rendering her decision, the Commissioner explained she had utilized the Department's required Performance Framework "to evaluate the relative success of the elementary, middle, and high school programs offered by charter schools." See N.J.A.C. 6A:11-1.2; N.J.A.C. 6A:11-1.2; see also Off. of Charter & Renaissance Schs., N.J. Dep't of Educ., Performance Framework (rev. July 2017) [hereinafter Performance Framework], https://www.nj.gov/education/chartsch/accountability/docs/PerformanceFramework.pdf. The Performance Framework is "the accountability system that shall be used by the Department to evaluate the academic, financial, and organizational performance of each charter school." N.J.A.C. 6A:11-1.2.

The February 18, 2021 Charter Amendment Request

In a February 18, 2021 letter to Commissioner Allen-McMillan, College Achieve sought a charter amendment permitting one of two options. College Achieve requested an amendment expanding the grade configuration for its school to kindergarten through grade ten with a decrease in maximum enrollment from 961 to 930 students or, in the alternative, expansion of the grade levels through grade twelve by June 2024 with a decrease in maximum enrollment to 858 students by the end of the charter term in 2026. Before a response to the request was provided, Commissioner Dehmer replaced Commissioner Allen-McMillan.

In an August 13, 2021 letter, Commissioner Dehmer denied the request after reviewing College Achieve's "academic, operational, and fiscal standing based on the criteria outlined in the . . . [Performance Framework]." The Commissioner explained the Performance Framework required measurement of the school's academic performance based on the "relative success of the elementary, middle[,] and high school programs offered" by the school. The Commissioner further noted the February 1, 2021 letter granting College Achieve's charter renewal had explained that a statewide assessment for the 2017-2018 school year resulted in a Tier 3—"low performing"—rank for the

school and a Tier 2—"middle performing"—rank for 2018-2019.[3] The Commissioner determined that "[a]bsent the results of statewide assessments for the 2019-2020 school year," the request for the charter amendment "fails to articulate local assessment data that would bolster the Department's confidence that College Achieve . . . continues to make academic gains."

Commissioner Dehmer also denied the requested charter amendment based on concerns about College Achieve's financial performance, as assessed under the Performance Framework. The Commissioner explained that a review of College Achieve's fiscal year 2020 had "indicate[d] that the school met few standard rated measures in the Fiscal Performance Framework." More particularly, the Commissioner determined "[t]he current ratio and unrestricted days cash variance" had not met the "standard for the first two years of the charter, while enrollment variance fell far below standards for all three years of the charter," and "[a]ctual enrollment fell far below maximum enrollment and was significantly below budgeted enrollment since inception."

---

[3] Under the Performance Framework, academic performance is measured using a tier system, with Tier 1 indicating a "high performing" school, Tier 2 indicating a "middle performing" school, and Tier 3 indicating a "low performing school." Performance Framework, at 5-6.

A-2195-21

The Commissioner further rejected the requested charter amendment based on concerns about the school's organizational performance. The Commissioner explained the organizational performance matrix of the Performance Framework required consideration of whether College Achieve had "demonstrated the organizational capacity to sustain the amendment request." Commissioner Dehmer noted "[t]he ability to serve grades not approved within the current charter is not [guaranteed]," the school "has an obligation to ensure that systems are in place for the seamless transition of students post the grade levels authorized to serve," and "the amendment request failed to articulate the additional instructional staff required to provide robust high school instruction and how College Achieve . . . would provide rich high school programming for the additional grades."

The Commissioner further explained he had considered letters supporting and opposing the requested charter amendment. As noted, Commissioner Dehmer denied the requested amendment in the August 13, 2021 letter. At some point following issuance of the August 13, 2021 denial, former Commissioner Allen-McMillan replaced Commissioner Dehmer.

6

<u>The November 30, 2021 Charter Amendment Request</u>

Three and a half months after the August 13, 2021 letter rejecting its charter amendment application, College Achieve submitted a November 30, 2021 letter to Commissioner Allen-McMillan again seeking a charter amendment to add grades ten through twelve and reduce maximum enrollment. College Achieve acknowledged it had made an identical request in February 2021, that had been rejected in Commissioner Dehmer's August 13, 2021 letter. College Achieve asserted it was entitled to the charter amendment because in its view, it had addressed, or was addressing, the stated bases for the August 13, 2021 denial.

For example, College Achieve stated the Commissioner's August 13, 2021 letter had denied the charter amendment in part because the school had received a Tier 3—"low performing"—rating. College Achieve disputed the purported finding, asserting the school had "recently been designated as being advanced to Tier 2."

College Achieve's assertion misstated the Commissioner's August 13, 2021 rejection decision, which noted College Achieve had obtained a Tier 3 ranking for 2017-2018 but also recognized the school had obtained a Tier 2 ranking for 2018-2019. That is, contrary to College Achieve's claim, the

A-2195-21

improvement of its tier ranking was considered by Commissioner Dehmer in the August 13, 2021 denial. In fact, Commissioner Dehmer had rejected the amendment application despite the improvement in the tier ranking, noting the school had a "low" Tier 2 ranking of only 38.3 points.[4] Commissioner Dehmer had also explained there had been no statewide assessments permitting a revision of the tier ranking for the most recently completed 2019-2020 school year and College Achieve had not provided "local assessment data" supporting a determination that the school "continues to make academic gains."

Despite its misstatement about Commissioner Dehmer's purported failure to consider the school's Tier 2 ranking, in its November 30, 2021 amendment application, College Achieve acknowledged the August 13, 2021 denial was based in part on the absence of local assessment data showing improved student performance. Addressing the deficiency, College Achieve asserted: a New Jersey Start Strong (Start Strong) assessment showed a "participation rate" of approximately ninety percent and an increase—from the second to the twenty-

---

[4] Under the Performance Framework, the range for a Tier 2 rating is between 35 and 64.9 percent of points possible based on the academic performance metric. Performance Framework, at 5-6. As noted by the Commissioner, College Achieve's Tier 2 ranking for the 2018-2019 school year was only 38.3 percent, just 3.3 percent above the minimum score for the ranking. See id. at 6.

fifth percentile—in an "ESSA[5] summative ranking" from 2018-2019; the school's chronic absenteeism rate had been reduced from 26.6 percent in 2018-2019 to 2.6 percent in 2020-2021; and a "new assessment platform"—Fastbridge—had established increased schoolwide averages for math and English language skills in 2019-2020.

College Achieve also addressed the financial performance concerns Commissioner Dehmer had noted in the August 13, 2021 denial. College Achieve represented that its current working capital ratio satisfied the Performance Framework standard for 2021, but acknowledged its unrestricted days cash "does not meet the standard." Similarly, College Achieve addressed the Performance Framework's requirement for "[l]onger term financial sustainability," claiming it "now" met the "[d]efault" standard but also acknowledging it did not meet the framework's "cash flow" standard. College Achieve further asserted it had "now met" the financial audit and financial management and compliance standards in the Performance Framework.[6]

---

[5] "ESSA" is an acronym for the Every Student Succeeds Act, 20 U.S.C. §§ 6301 to 7941.

[6] The various standards to which College Achieve referenced in its November 30, 2021 letter request for the charter amendment are defined in the Performance Framework. See Performance Framework, at 19-21 (defining "current [working

College Achieve further addressed the issue of enrollment variance, claiming its enrollment had grown to ninety percent of the planned enrollment at the school and offering explanations—issues related to taking occupancy of a new facility and student uncertainty attendant to not having a viable high school program—as to why its enrollment was not higher. College Achieve acknowledged enrollment variance is a metric under the Performance Framework that requires ninety-five percent enrollment to satisfy the metric's standard. See Performance Framework, at 20.

College Achieve's November 30, 2021 request for an amendment to its charter also addressed Commissioner Dehmer's August 13, 2021 concerns regarding organizational capacity. College Achieve explained it had "added key staff including a high school principal, high school pathway guidance counselor, additional social workers and a high school certified teaching staff." It further represented it had established "a complete high school program aligned with [the Department's] credit requirements for graduation including opportunities for advanced placement and dual enrollment."

---

capital] ratio," "[u]nrestricted days cash," "[d]efault," "[f]inancial audit," "[f]inancial [m]anagement and [c]ompliance," "[c]ash flow," and other metrics used to assess the performance of charter schools).

Neptune BOE submitted a letter to Commissioner Allen-McMillan in opposition to College Achieve's November 30, 2021 request for the charter amendment. The letter noted the improvement in College Achieve's tier ranking—from Tier 3 to Tier 2—but pointed out the improved ranking was based on the 2018-2019 school year and College Achieve had not provided any ranking for the two school years—2019-2020 and 2020-2021—prior to its November 30, 2021 charter amendment request.

Neptune BOE further alleged deficiencies in College Achieve's reliance on the Start Strong data, explaining it did not measure educational progress but served only "as a beginning point for districts to use for planning purposes." Neptune BOE also asserted the Start Strong data on which College Achieve relied was not supported by necessary details, such as the number and percentage of students tested or the manner in which they were tested.

Neptune BOE further questioned College Achieve's reliance on ESSA data and College Achieve's claim the school had moved in one year from the second percentile to the twenty-fifth percentile in one measured standard. Neptune BOE claimed the ESSA reports for 2017-2018 did not support College Achieve's claim and questioned why that information, which had been available prior to the August 13, 2021 rejection of the identical request for a charter

11

amendment, now supported an application made two years after the school year in which the purported improvement occurred.

Neptune BOE also challenged the validity of College Achieve's claim that local assessment tools utilized during the 2019-2020 and 2020-2021 school years showed increased rates of academic improvement. The Neptune BOE asserted the local assessments were "diagnostic in nature" and the alleged gains shown were the product of unreliable tests taken at home in June 2020, when schools were closed and the students attended school virtually. Also, according to Neptune BOE, the information provided by College Achieve did not include the number of students tested, the test setting, or the information used as the baseline for assessing progress.

Additionally, Neptune BOE noted that although College Achieve had claimed its chronic absenteeism was reduced to 2.6 percent in 2020-2021, its school performance reports did not include any information for 2019-2020 and otherwise reflected no assessment of the factor for 2020-2021. Neptune BOE also asserted that College Achieve had consistently over-estimated its enrollment and thereby adversely affected Neptune BOE's budget planning.

In a January 14, 2022 letter, Neptune BOE's counsel submitted an additional letter on the board's behalf opposing College Achieve's charter

amendment request. In pertinent part, counsel noted the November 30, 2021 letter request was based solely on conclusory assertions of academic improvements; did not include any "supportive documentation"—as required by the Charter Amendment Guidelines (Guidelines) promulgated by the Department[7]—supporting College Achieve's claims; included admissions College Achieve did not satisfy Performance Framework standards for working capital ratio and cash flow; and relied on College Achieve's belief it would satisfy the standards in the future.

Counsel further averred College Achieve had inaccurately represented that its three facilities could accommodate 961 students in grades kindergarten through grade twelve because one of its facilities—located on West Banks Avenue—is approved only for use for kindergarten through grade eight. Counsel also asserted College Achieve had failed to include information required under the Guidelines detailing the "key components of the educational

---

[7] See Charter Amendment Guidelines, N.J. Dep't of Educ. [hereinafter Guidelines], https://www.nj.gov/education/chartsch/about/info/amendment_gui delines.shtml (Aug. 2022) (providing in part an application to amend a charter school application must include "[a] formal cover letter of request to the Commissioner . . . that includes the rationale for the requested amendment and other supportive documentation").

model" and "the team's individual and collective qualifications for implementing" the addition of grades ten through twelve.

In a February 8, 2022 letter, Commissioner Allen-McMillan approved the charter amendment, explaining she did so after considering the public comments received by Neptune BOE and the Asbury Park Board of Education and after evaluating the application based on the Performance Framework. As to academic performance, the Commissioner found College Achieve had improved to a Tier 2 rank for the 2018-2019 school year and its rank had not been redetermined during the 2019-2020 and 2020-2021 school years due to a lack of "statewide assessment[] results" available during those times.

The Commissioner concluded the "2021 Start Strong and interim and end-of-year assessments results[] suggest[ed]" that College Achieve "maintains data systems to continue measuring academic achievement and progress" and "ongoing presentation of locally administered assessments over the terms of the charter signals significant growth."

Addressing the financial performance metric of the Performance Framework, the Commissioner found that College Achieve "met many standard rated measures" in the Performance Framework. The Commissioner also found College Achieve would meet all "fiscal performance indicators" because the

Department "believes" College Achieve will do so "through the reduction in charter enrollment" it had proposed as part of the requested charter amendment.

The Commissioner further found College Achieve satisfied the organizational performance metric, accepting College Achieve's representation that it had added a high school principal, certified high school teaching staff, and will implement a high school program with advanced placement courses and also because the Department believes College Achieve will implement the requisite educational programs for the proposed added grades—ten through twelve.

On March 3, 2022, the Commissioner issued a modified decision granting the charter amendment. With one minor exception, the modified decision is identical to the February 8, 2022 decision; it differs only in that it includes a different calculation of projected student enrollment not relevant to the issues presented on appeal. The March 3, 2022 decision constitutes the Department's final agency decision addressing College Achieve's charter amendment request.

Neptune BOE appealed from the Commissioner's final agency decision approving the charter amendment. The Commissioner later submitted a Statement of Items Comprising the Record on Appeal (Statement of Items), which included two reports that post-dated the initial February 8, 2022 decision

granting College Achieve's request. More particularly, the Statement of Items included a February 24, 2022 Comprehensive Annual Financial Report of the College Achieve Greater Asbury Park Charter School of New Jersey for the Fiscal Period Ended June 30, 2021 (the February 24, 2022 CAF Report), and a March 8, 2022 College Achieve Paterson Charter School Auditors Management Report on Administrative Findings Financial Compliance and Performance for the Fiscal Year Ended June 30, 2021 (the March 8, 2022 AFFC Report). Neither College Achieve nor Neptune BOE moved to settle the record based on the inclusion of the two reports that post-dated the Commissioner's February 8, 2022 decision. See R. 2:5-5 (permitting a motion to settle the record on appeal).

## II.

Our scope of review of the Commissioner's decision is narrow. We "may reverse an agency decision if it is arbitrary, capricious, or unreasonable," In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385 (2013) (citing In re Petitions for Rulemaking, N.J.A.C. 10:82-1.2 & 10:85-4.1, 117 N.J. 311, 325 (1989)), or "when 'it is clear that the agency action is inconsistent with its mandate[,]'" ibid. As our Supreme Court has explained:

> [A]lthough sometimes phrased in terms of a search for arbitrary or unreasonable agency action, the judicial role [in reviewing an agency action] is generally restricted to three inquiries: (1) whether the agency's

action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Id. at 385-86 (second alteration in original) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

We also owe deference to a commissioner's findings because of his or her expertise in the educational field. See id. at 389. In our review of a decision concerning a charter school's application for a charter amendment, we must recognize the Commissioner performs a quasi-legislative function. In re Renewal Application of TEAM Acad. Charter Sch., 247 N.J. 46, 74 (2021). In fulfilling that role, the Commissioner is not required "to provide 'the kind of formalized findings and conclusions necessary in the traditional contested case.'" Ibid. (quoting In re TEAM Acad. Charter Sch., 459 N.J. Super. 111, 140 (App. Div. 2019)). The Commissioner's "reasons [for her decision] need not be as detailed or formalized as an agency adjudication of disputed facts; they need only be inferable from the record considered by the agency." In re Englewood on the Palisades Charter Sch., 320 N.J. Super. 174, 217 (App. Div. 1999), aff'd as modified, 164 N.J. 462, 476-77 (2000). "For 'more policy-driven, quasi-

legislative acts' such as those at issue here, 'the record may be less extensive' than the record of a contested case." Renewal Application of TEAM Acad., 247 N.J. at 74 (citation omitted). Nonetheless, "[t]he basis for the determination . . . 'must be discernible from the record' considered by the agency." Id. at 75 (quoting In re Red Bank Charter Sch., 367 N.J. Super. 462, 476 (App. Div. 2004)).

A reviewing "court's determination [of] whether the record contains 'substantial evidence to support the findings on which the agency based its action' requires 'a sifting of the record, and the ability to find support for the conclusions reached by the Commissioner under the statutory framework within which she [or he] must act.'" Id. at 75 (citation omitted); see also Red Bank, 367 N.J. Super. at 476. For example, in Englewood the Court explained the manner in which the Commissioner is to assess the racial impact a charter school would have on the district in which the charter school operates. 164 N.J. at 329. The Court explained that it did not express a "view on the formality or structure of that analysis except to state that it must take place before final approval is granted to a charter school applicant." Ibid. The Court otherwise left "the form and structure of that analysis to the Commissioner and State Board to determine." Ibid.

A-2195-21

Measured against these standards, we are not persuaded the Commissioner's findings and conclusions concerning the academic, financial, and operational prongs of the Performance Framework, or the March 3, 2022 final agency decision granting the requested charter amendment, were arbitrary, capricious, and unreasonable. Neptune BOE challenges the Commissioner's reliance on, and questions the validity of, the local assessments, including the Fastbridge, Start Strong, and ESSA data, as proper measures of College Achieve's academic performance under the Performance Framework, in the absence of available statewide assessments for the 2019-2020 and 2020-2021 school years.

We recognize Neptune BOE argues the data is, for various reasons, not a reliable indicator of College Achieve's academic performance and progress at the school, but the results of the various assessments are included in the record and we must defer to the Commissioner's expertise in interpreting the data and applying it in fulfilling her quasi-legislative role of determining College Achieve's satisfaction of the academic performance metric of the Performance Framework. See generally In re Stallworth, 208 N.J. 182, 194-95 (2011) (citation omitted) (explaining a reviewing court may not substitute its judgment for an agency's, "particularly . . . when the issue under review is directed to the

agency's special 'expertise and superior knowledge of a particular field'").

Stated differently, we discern no basis to conclude the Commissioner's reliance on the data, and conclusions based on the data, are arbitrary, capricious, or unreasonable.

We similarly reject Neptune BOE's claim the Commissioner arbitrarily, capriciously, or unreasonably assessed the organizational performance metric of the Performance Framework. Neptune BOE argues College Achieve failed to submit information in its charter amendment request that is required under the Guidelines. More particularly, Neptune BOE claims College Achieve did not supply, and the record does not otherwise include, information concerning educational approaches, instructional strategies, the individual and collective qualifications of the school's leadership, administration, and governance, staffing and recruiting, performance management, and curriculum, instruction and assessment as required by the Guidelines.

We reject this argument because it is based on a misinterpretation of the Guidelines. The Guidelines' requirement for submission of the information Neptune BOE claims is lacking is inapplicable to College Achieve's request to amend a charter to permit the addition of grades ten through twelve. Those grades are within the nine-through-twelve-grade band, and the Guidelines'

20

requirement on which Neptune BOE relies is expressly limited to requests to amend a charter to add "another grade span." Guidelines (Increasing Enrollment or Expanding Grade Levels). Thus, by its plain terms, the guideline cited by Neptune BOE does not apply where, as here, a charter school seeks a charter amendment to allow only additional grade levels within a grade span.

We are also not persuaded the Commissioner acted arbitrarily, capriciously, or unreasonably by concluding College Achieve satisfied the operational performance metric of the Performance Framework. The Commissioner accepted College Achieve's representations it had added a high school principal and social workers and had certified high school teaching staff, its high school program would be consistent with the Department's graduation requirements and included advanced placement courses and dual enrollment, and it had hired a shared services business professional to support its expenditure of funds from various sources. Given the nature of the requested amendment to the charter—adding grade levels progressively over a multiyear period—the Commissioner reasonably relied on College Achieve's representations as to what it had done, and what it committed to doing in the future, to ensure satisfaction of the operational performance metric. And the Commissioner's determinations concerning the operational performance metric

21

are "discernable" and "inferable from the record," and therefore are not arbitrary, capricious, or unreasonable. Englewood, 320 N.J. Super. at 217.

The record also supports the Commissioner's determination concerning the financial performance metric of the Performance Framework. The Commissioner found that College Achieve "met many standard rated measures in the [f]iscal Performance Framework." In its brief on appeal, the Commissioner relies on, and cites extensively to, the February 24, 2022 CAF Report as evidence supporting the Commissioner's determination under the financial performance metric.[8]

Neptune BOE argues the Commissioner could not have considered the February 24, 2022 CAF Report because it was issued following the Commissioner's February 8, 2022 decision approving the charter amendment. We need not address that contention because the final agency decision in this

---

[8] For example, in support of its claim the Commissioner's determination and conclusions concerning College Achieve's financial performance satisfied the financial performance metric in the Performance Framework, the Department relied on the following information gleaned from College Achieve's February 24, 2022 CAF Report: College Achieve's fund balance grew from fiscal year 2019-2020; College Achieve's fund increased $134,885, or 2.4 percent, from fiscal year 2019-2020; College Achieve's unreserved, unassigned fund balance for 2021 was four percent of its total operating budget and its working capital ratio increased from 1.02 in fiscal year 2019 and 1.39 in fiscal year 2021; College Achieve met the standard for debt service and did not have any debt; and the school's enrollment substantially increased from fiscal year 2019-2021.

matter was issued on March 3, 2022, and, as such, the information in the report was available to the Commissioner prior to the issuance of the final agency decision from which this appeal was taken.

We defer to the Commissioner's interpretation of the data included in the report as supporting College Achieve's charter amendment application. Although the report shows—and College Achieve admits—the financial data does not precisely satisfy all the standards in the financial performance metric under the Performance Framework, Neptune BOE offers no basis to conclude that any deviation from the standards requires a rejection of a charter amendment when, in the exercise of the Commissioner's discretion and expertise, there is evidence supporting a conclusion the deviations will be remedied. Indeed, the Commissioner noted College Achieve satisfied "most" of the financial standards in the Performance Framework metric and determined College Achieve's financial performance otherwise supported the charter amendment in part because the requested amendment would improve its financial performance by decreasing enrollment from 961 to 858 students. Again, we defer to the Commissioner's expertise on such issues. See Proposed Quest Acad., 216 N.J. at 389.

A proper analysis of each of the three criteria—academic, financial, and organizational performance—that the Commissioner is required to evaluate under the Performance Framework is essential to a valid determination of a whether a charter school is entitled to a charter amendment. See N.J.A.C. 6A:11-2.6(b) (requiring in part that the Commissioner "review a charter school's performance data in assessing the need for a possible charter amendment"); see also N.J.A.C. 6A:11-1.2 (explaining a charter school's performance data is determined under the three criteria included in the Performance Framework). As we have explained, the Commissioner's evaluation, reasoning, conclusions concerning academic, financial, and operational criteria of the Performance Framework appear supported by the record and are subject to deference based on the Commissioner's expertise and fulfillment of the quasi-legislative role she played in the assessment of the charter amendment application. We therefore find no basis to conclude the Commissioner's final decision is arbitrary, capricious, or unreasonable. See Stallworth, 208 N.J. at 194-95.

Neptune BOE also argues the Commissioner's decision granting College Achieve's charter amendment request should be reversed in part because the Commissioner failed to consider the comments and evidence included in Neptune BOE's January 13, 2022 letter opposing the amendment. Neptune BOE

claims the failure to consider the comments and evidence is established by the fact that the original Statement of Items does not include Neptune BOE's January 13, 2022 submission. Neptune BOE argues that if the Commissioner had considered the comments and evidence in granting the charter amendment, they would have been included in the Statement of Items.

In the March 3, 2022 decision granting the amendment, the Commissioner expressly noted she had considered the public comments submitted by Neptune BOE. Moreover, we are not persuaded the record establishes the Commissioner did not consider Neptune BOE's January 13, 2022 submission. Following the filing of the original Statement of Items, the Attorney General's Office advised that the statement erroneously failed to include Neptune BOE's submission in opposition to the requested charter amendment. The Attorney General's Office then submitted an Amended Statement of Items that included Neptune BOE's January 13, 2022 submission. Neptune BOE offers no basis to suggest the failure to include the submission in the original Statement of Items was the product of anything other than an inadvertent failure to include it, and we therefore reject the claim that the failure to refer to the submission in the original statement established the Commissioner did not consider it in granting the charter amendment.

A-2195-21

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2195-21